## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ALICA K. BERGMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25-cv-1318-DWD |
| | ) | |
| BEST BUY COMPANY, INC., | ) | |
| AND BEST BUY STORES, L.P.., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Alica K. Bergman, a former employee of Best Buy Stores, L.P. ("BB Stores"), alleges BB Stores and Best Buy Co., Inc. ("BB Co.") (collectively "Defendants" or "Best Buy")[1] retaliated against her for reporting a workers' compensation claim, discriminated against her based on her age and gender, violated the Illinois Personnel Records Review Act, and acted willfully and Wantonly. (Doc. 1-2). Now before the Court is Defendants' Motion to Dismiss or Stay the Case and Compel Arbitration (Doc. 7) and Memorandum in Support (Doc. 8). Plaintiff filed a Memorandum in Opposition (Doc. 10), to which Best Buy replied (Doc. 11). For the reasons explained below, the Court will grant the motion to compel arbitration, deny the motion to dismiss, and stay the action.

---

[1] BB Stores is an indirect subsidiary of BB Co. (Doc. 8-1 ¶ 2).

# I.    PRELIMINARY MATTER – PERSONAL IDENTIFIERS

As a preliminary matter, Plaintiff's request that Defendants be admonished for allegedly disclosing "personal identifiers" is without merit. The exhibit at issue was filed in connection with Defendants' motion to dismiss or compel arbitration and consists of Plaintiff's own employment application paperwork, material Plaintiff placed at issue by initiating this litigation. *See, e.g., Baxter Int'l, Inc. v. Abbott Lab'ys,* 297 F.3d 544, 546 (7th Cir. 2002). The exhibit contains Plaintiff's address, telephone numbers, email address, job history, and income history, none of which are protected identifiers under FED. R. CIV. P. 5.2 or SDIL Local Rule 5.1(c)(1).[2] The only category covered by Rule 5.2, social security numbers, was properly limited to the last four digits, which the Rule expressly permits. Because the filing complies with Rule 5.2 and the Local Rule, and contains no information subject to mandatory redaction, there is no basis to admonish Defendants.

# II.    BACKGROUND

## A. Application Process

To apply for jobs or respond to job offers at Best Buy, applicants must create a unique ID and secure password to log into the online system. (Doc. 8-1 ¶ 5). Best Buy maintains an arbitration policy (the "Arbitration Policy" or "Policy") that applies to all employees and job applicants. (Doc. 8-1 ¶ 6).

---

[2] SDIL Local Rule 5.1(c)(1) provides that parties "shall refrain from including, or shall redact where inclusion is necessary, personal identifiers…in accordance with Fed. R. Civ. P. 5.2…" Because the Local Rule requires that parties refrain from including or redact "in accordance with" Rule 5.2, its scope is confined to the narrow categories listed in that Rule, and does not extend to addresses, telephone numbers, email addresses, job history, or income history.

Since March 2016, the Arbitration Policy has been incorporated into Best Buy's electronic job application process. (Doc. 8-1 ¶ 7). All applicants, including current employees applying for different positions, receive an electronic link to the full Policy, which they can click to open and review. (Doc. 8-1 ¶ 7). During the application process, applicants see the following notice:

Best Buy has an Arbitration Policy under which any disputes between any applicant for employment or employee and Best Buy must be arbitrated on an individual basis. The Policy is a required condition of your application for employment and, if you are hired, of your employment at Best Buy.

Review and agree to the **Policy (click to view detailed policy)** to continue with your application.

(*Id.*). Applicants must then click an "I agree" button on the Acknowledgement and Consent page to confirm their agreement to the Arbitration Policy before proceeding. (Doc. 8-1 ¶ 9). An applicant cannot complete or submit a job application online without clicking this "I agree" button. (Doc. 8-1 ¶¶ 7-9).

### B.  Plaintiff's Employment with Best Buy

Plaintiff is a former Best Buy employee. (Doc. 8-1 ¶ 4). She worked for the company from August 21, 2017, until her employment ended on May 21, 2025. (Doc. 8-1 ¶ 4). On July 12, 2017, Plaintiff submitted an online application for the position of In-Home Operations Specialist. (Doc. 8-1 ¶ 10). In the course of submitting her application, Plaintiff completed the Acknowledgment and Consent page and confirmed her agreement to the Arbitration Policy. (Doc. 8-1 ¶ 11).

Acknowledgement and Consent :10

I agree to Best Buy's Arbitration Policy:  I Agree

Please check this box if you consent to provide an electronic signature    I Agree
rather than a handwritten signature whenever you sign documents on
this website.:

(Doc. 8-1, pg. 13).

Candidate Form: Arbitration Policy - Bergman, Alica

Best Buy has an Arbitration Policy under which any disputes between any applicant for employment or employee and Best Buy must be arbitrated on an individual basis. The Policy is a
required condition of your application for employment and, if you are hired, of your employment at Best Buy.

Review and agree to the Arbitration Policy to continue with your
application.

I agree to Best Buy's Arbitration Policy.:

I Agree

(Doc. 8-1, pg. 20).

After submission, Best Buy sent an email confirming receipt of Plaintiff's application. The email stated that by submitting the application, she had agreed to the Arbitration Policy and included an attached copy of the Policy for her review. (Doc. 8-1 ¶ 12).

Bergman, Alica

Dear Alica,

Thank you for your interest in joining Best Buy! We received your submission for the following position: In Home Operations Specialist (Market 13) - 519922BR.

A system-generated candidate reference number has been created for you and may be useful to keep for your records. Your candidate reference number is: 23923381.

For your reference, as you agreed to in your application, Best Buy has an Arbitration Policy under which any disputes between any applicant for employment or employee and Best Buy must be arbitrated on an individual basis. The Policy is a required condition of your application for employment and, if you are hired, of your employment at Best Buy.

Here is a copy of the policy, for your records.

We are currently reviewing your qualifications in relation to the requirements of this position. Should there be a match, we will contact you with an update regarding your status and next steps in the application process. We will be evaluating many candidates during this time period and sincerely appreciate your patience during the selection process.

If you would like to check the status of your profile, log in to your profile.

While we may not make personal contact on every application we receive, please know we do value your effort and interest shown in working for Best Buy. Please visit our Career Site at careers.bestbuy.com if you need to view or update your profile information. You can also review and submit to other current job openings. At Best Buy and our Affiliates our number one priority is to create an environment where our employees closest to the customer can build lasting relationships, providing trusted technology and entertainment expertise to improve our customer's lives. We appreciate your interest in joining our team!

(Doc. 8-1, pg. 21).

Plaintiff was offered the In-Home Operations Specialist position on or about August 1, 2017. (Doc. 8-1 ¶ 13). Defendants contend that the official offer letter included a copy of the Arbitration Policy and a separate document describing its terms. (Doc. 8-1 ¶ 13). On at least ten additional occasions when she applied online for other Best Buy positions, Plaintiff clicked "I agree" to the Policy to proceed with the application process. (Doc. 8-1 ¶ 15). She clicked "I agree" to the Policy during the application process on the following dates:

1. November 1, 2020
2. November 12, 2020 (two applications)
3. November 20, 2020
4. May 20, 2021
5. May 27, 2021
6. June 9, 2021
7. August 12, 2023
8. August 22, 2023
9. August 25, 2023

(Doc. 8-1 ¶ 15).

Plaintiff does not dispute the application process as described by Best Buy, including that the process required applicants to click "I Agree" to the Policy to proceed to the next screen and to complete the application process. (Doc. 10-1 ¶ 5). However, Plaintiff states that "I was never supplied with a copy of any agreement to arbitrate, a copy of any Arbitration Policy, or any Employment Arbitration Rules of the AAA while I was employed by any Defendant." *Id.*

Plaintiff did not physically sign the Arbitration Agreement. *Id.* Additionally, she never read the Arbitration Agreement and was not required to read the Arbitration Agreement. *Id.*

**C.  <u>Arbitration Agreement</u>**

The Arbitration Agreement provides, in relevant part, as follows:

**Summary**

### Summary

This Policy is a binding contract between Best Buy and Best Buy's employment applicants and Employees. Any contractual disclaimers that Best Buy has regarding its other policies or otherwise do not apply to this Policy.

This Policy requires that employment applicants and Employees bring in arbitration, rather than in court, any past, present or future claims, disputes, or lawsuits of any kind ("Claims") that they may have against Best Buy, on an individual basis only. Likewise, this Policy requires Best Buy to bring any Claims it has against any applicant or Employee in arbitration rather than in court, on an individual basis only. For Employees, this Policy is a mandatory condition of initial and continuing employment at Best Buy and applies even after employment ends. **By becoming or remaining employed after the effective date of this Policy, employees agree to this Policy's terms.** For applicants, this Policy is a mandatory condition of being considered for employment with Best Buy.

**All disputes covered by this Arbitration Policy will be decided by an arbitrator in arbitration and not by way of a court or jury trial.**

(Doc. 8-1, pg. 5).

## Covered Claims

Except as described in the "Claims not Covered" section, past, present, or future Claims between an Employee/former Employee or applicant and Best Buy, that arise out of or relate in any way to the applicant's or Employee's employment application, employment and/or termination of employment with Best Buy are covered by this Policy. Covered Claims include, but are not limited to, Claims related to the applicant's or Employee's recruitment, background check, hire or non-hire, employment terms and conditions, wages and compensation, promotion or non-promotion, leaves of absence, benefits, and employment termination.

(Doc. 8-1, pg. 6).

Except as otherwise provided in the "Claims not Covered" section, Claims covered by this Policy include Claims based on any statute, regulation, wage order, ordinance, or any other law or legal theory. Covered Claims include, but are not limited to, the following:

- Contract and promissory estoppel claims
- Tort claims such as defamation, negligent or intentional infliction of emotional distress, malicious prosecution, false imprisonment, assault, battery or invasion of privacy
- Wrongful discharge claims

Arbitration Policy — Page **2** of **6**

- Fraud and misrepresentation claims
- Breach of fiduciary duty claims
- Negligence claims
- Discrimination, harassment, and retaliation claims
- Claims under any federal, state or local statute, regulation, wage order or ordinance, such as:

(Doc. 8-1, pgs. 6-7)

## Arbitrability Questions

Any dispute as to arbitrability, including disputes about this Policy's enforceability, unconscionability, validity and applicability to a particular Claim must be resolved by the arbitrator in arbitration and not by the court. However, the preceding sentence does not apply to the class and collective action waiver and/or representative action waiver. Any claim that the class and collective action waiver or representative action waiver is unenforceable for any reason must be decided by a court and not an arbitrator.

(Doc. 8-1, pg. 11).

### D. Procedural History and Argument

Plaintiff filed this action in the Circuit Court of St. Clair County, Illinois, on May 22, 2025. (Doc. 1). In her Complaint, Plaintiff alleges that Defendants retaliated against her for reporting a workers' compensation claim, discriminated against her based on her age and gender, violated the Illinois Personnel Records Review Act, and acted willfully and wantonly. (Doc. 1-2). Defendants removed the action to this Court (Doc. 1) and subsequently moved to compel arbitration or, in the alternative, to dismiss the Complaint. (Doc. 7). Defendants contend that Plaintiff assented to a binding arbitration agreement that covers all claims asserted in the Complaint and that the Court therefore must compel arbitration and stay this action. (Doc. 7).

Plaintiff responds that no agreement to arbitrate was ever formed and that, even if one was, it is unenforceable. (Doc. 10) She first challenges contract formation and enforceability, arguing that she never physically signed an agreement, did not read and was not required to read the Arbitration Agreement, did not receive a copy of it, and that the Agreement is unenforceable due to lack of due process, unconscionability, fraud or duress, and public policy concerns. *Id.* Plaintiff further contends that the Arbitration Agreement is void and/or unenforceable under the Illinois Workplace Transparency Act ("IWTA"), 820 Ill. Comp. Stat. 96/1-1 et seq. *Id.*

Defendants counter that a valid Arbitration Agreement was formed and that any challenges to its enforceability are questions for the arbitrator, not the Court. (Doc. 8). With respect to the IWTA, Defendants argue that the statute is inapplicable because Plaintiff first assented to the Agreement in 2017, nearly two and a half years before the

IWTA took effect on January 1, 2020, and the statute does not apply retroactively. *Id.* Finally, Defendants argue that even if the IWTA were applicable, it is preempted by the Federal Arbitration Act ("FAA"), which displaces state laws that prohibit outright the arbitration of a particular type of claim or that operate in a manner that disfavors arbitration. *Id.*

## III.    APPLICABLE LAW

### A. Federal Arbitration Act

Defendant moves to compel arbitration under the Federal Arbitration Act ("FAA"). The FAA mandates that courts enforce valid, written arbitration agreements. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2). This mandate reflects a federal policy that favors arbitration and "places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Arbitration should be compelled under the FAA when "three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (citing 9 U.S.C. §§ 3–4).

Courts must decide whether an agreement to arbitrate exists before compelling arbitration. *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 741–42 (7th Cir. 2010); *accord K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022). In making that determination, courts apply state contract law to decide whether a binding arbitration agreement was formed. *Janiga*, 615 F.3d at 742; *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002).

Once the court concludes that the parties formed an agreement to arbitrate, it may presumptively resolve challenges directed at the agreement's validity, enforceability, and scope. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also First Options*, 514 U.S. at 944–45. The parties, however, may agree to delegate those threshold issues to the arbitrator rather than the court. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).

For delegation to apply, there must be clear and unmistakable evidence that the parties intended to arbitrate threshold questions of validity, enforceability, and scope. *First Options*, 514 U.S. at 944. That evidence often appears in a written provision expressing the parties' intent to have the arbitrator decide such matters. *See, e.g., Rent-A-Center*, 561 U.S. at 71–72 (discussing a written delegation provision); *K.F.C.*, 29 F.4th at 837 (intent to delegate found in a "broad delegation clause"). Where the parties have delegated these issues, the court "possesses no power to decide the arbitrability issue," whatever its view of the merits. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

Some issues, however, always remain within the court's authority. Most notably, the court must decide whether the parties formed a contract in the first place. *K.F.C.*, 29 F.4th at 837 ("Even the most sweeping delegation cannot send the contract formation issue to the arbitrator, because, until the court rules that a contract exists, there is simply no agreement to arbitrate.").

The party seeking to compel arbitration bears the burden of establishing the existence of an agreement to arbitrate. *A.D.*, 885 F.3d at 1060. If that burden is met, the party opposing arbitration must present countervailing evidence sufficient to meet the standard required to oppose summary judgment. *Tinder*, 305 F.3d at 735. In other words, the nonmoving party must submit evidence raising a genuine issue of material fact concerning the existence of the agreement. *Id.* In reviewing the evidence, any "evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in [her] favor." *Id.* The court may not make credibility determinations, choose between competing inferences, or weigh conflicting evidence. *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007); *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

If the court determines that issues are arbitrable, the FAA requires it to compel arbitration and stay the litigation of those issues. *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007).

## B.  The Illinois Workplace Transparency Act

The IWTA seeks to "protect the interest of [the] State in ensuring all workplaces are free of unlawful discrimination and harassment," and declares certain types of employment agreements unenforceable. 820 Ill. Comp. Stat. 96/1-5. As relevant here, the Act states the following:

> Any agreement, clause, covenant, or waiver that is a unilateral condition of employment or continued employment and requires the employee or prospective employee to waive, arbitrate, or otherwise diminish any existing or future claim, right, or benefit related to an unlawful employment practice to which the employee or prospective employee would otherwise be entitled under any provision of State or federal law, is against public policy, void to the extent it denies an employee or prospective employee a

substantive or procedural right or remedy related to alleged unlawful employment practices, and severable from an otherwise valid and enforceable contract under this Act.

*Id.* 96/1-25(b).

### C. FAA Preemption

In *AT&T Mobility LLC v. Concepcion*, the Supreme Court explained how to evaluate whether the FAA preempts a state law by dividing such laws into two types. The first consists of rules that "prohibit[ ] outright the arbitration of a particular type of claim." 563 U.S. 333, 341 (2011). The second includes laws that are facially "generally applicable," but that may nevertheless be "applied in a fashion that disfavors arbitration." *Id.* For this second category, preemption depends on how the law operates in practice. Although the inquiry is case specific, such laws are preempted when they "have a disproportionate impact on arbitration or interfere with fundamental attributes of arbitration and thus create a scheme inconsistent with the FAA." *Mortensen v. Bresnan Commc'ns, LLC,* 722 F.3d 1151, 1159 (9th Cir. 2013) (cleaned up); *see Concepcion,* 563 U.S. at 341–44. By contrast, when a state rule falls into the first category, the preemption analysis "is straightforward: The conflicting rule is displaced." *Concepcion,* 563 U.S. at 341.

## IV.    DISCUSSION[3]

### A.  Agreement to Arbitrate – Contract Formation

The Court begins with whether Plaintiff agreed to arbitrate in the first place. Plaintiff does not dispute the mechanics of Defendants' online application process, nor does she dispute that she clicked the "I agree" button in August 2017, or on the subsequent occasions when she applied for other positions beginning in November 2020. She contends, however, that this did not bind her to a contract because (1) she did not physically sign the arbitration agreement; (2) she never read the arbitration policy; (3) she was not required to read it; (4) she was never supplied with a copy while employed; and (5) when she requested her personnel file during the pendency of this case in Illinois state court, Defendants did not produce a copy of the arbitration agreement, which she characterizes as "curious."

These assertions do not create a material dispute as to contract formation. Under Illinois law, contract formation "requires only a manifestation of mutual assent on the part of two or more persons." *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 711 (7th Cir. 2019) (citing *Zabinsky v. Gelber Grp., Inc.*, 807 N.E.2d 666, 671 (Ill. Ct. App. 2004)). Whether mutual assent exists is evaluated under an "objective theory," under which "intent to manifest assent . . . is revealed by outward expressions such as words and acts." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). The parties

---

[3] The parties do not dispute that Illinois law governs the Court's analysis. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflicts of laws unless the parties disagree on which state's law applies").

need not "share the same subjective understanding as to the terms of the contract." *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 515 N.E.2d 61, 65 (1987).

Illinois law also expressly recognizes electronic acceptance. The Uniform Electronic Transactions Act defines an "electronic signature" as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record," and provides that "[a] record or signature shall not be denied legal effect or enforceability solely because it is in electronic form." 815 Ill. Comp. Stat. Ann. 333/2(a); 815 Ill. Comp. Stat. Ann. 333/7). Further, courts frequently find that "clickwrap" agreements,[4] such as the agreements at issue here, are sufficient to satisfy the acceptance requirement. *See Sgouros v. TransUnion Corp.,* 817 F.3d 1029, 1033-34 (7th Cir. 2016) (An "electronic 'click' can suffice to signify the acceptance of a contract," and so courts have generally upheld clickwrap agreements provided "the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement.").

Here, Defendants have produced evidence of Plaintiff's initial and subsequent application processes. In each instance, Plaintiff was required to complete an "Acknowledgment and Consent" step. During that step, the screen stated:

> Best Buy has an Arbitration Policy under which any disputes between any applicant for employment or employee and Best Buy must be arbitrated on an individual basis. The Policy is a required condition of your application for employment, and if you are hired, of your employment at Best Buy.

---

[4] Courts in Illinois distinguish "clickwrap" from "browsewrap" agreements, the key difference being that clickwrap agreements require "a website user to expressly assent to the website's terms of use by clicking on an 'I agree' box after being presented with terms, before continuing" with the transaction. *Ambrosius v. Chicago Athletic Clubs, LLC,* 203 N.E.3d 239, 250 (Ill. App. Ct. 2021).

(Doc. 8-1 ¶ 7; Doc. 8-1, pgs. 13, 20, 31, 35, 39, 43, 47, 55).

The screen then directed Plaintiff to "[r]eview and agree to the Policy (with a link available to view the detailed policy) to continue with your application." Plaintiff proceeded past this screen and clicked "I agree." (Doc. 8-1 ¶¶ 7-11). Thereafter, Best Buy transmitted a confirmation email stating that by submitting her application Plaintiff had agreed to the Arbitration Policy. (Doc. 8-1, pg. 22). Defendants' evidence further shows that the same process occurred on multiple occasions between November 2020 and August 25, 2023, when Plaintiff applied for new positions and again clicked to accept the Arbitration Policy. (Doc. 8-1 ¶ 15).

Plaintiff does not dispute any of these facts. She does not deny that the arbitration disclosure appeared on her screen, that a link to the policy was available, or that she clicked "I agree" to proceed. Instead, she asserts that she never read the policy, never physically signed it, and was not later provided a copy. Those contentions do not defeat contract formation. "An electronic click can suffice to signify the acceptance of a contract," *Sgouros*, 817 F.3d at 1034, and a party may be bound even if she chose not to read the terms. *Hill v. Gateway, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997); *Novitsky v. Am. Consulting Eng'rs, LLC*, 196 F.3d 699, 702 (7th Cir. 1999); *All Am. Roofing, Inc. v. Zurich Am. Ins. Co.*, 404 Ill. App. 3d 438, 447–48 (2010).

Nor does the absence of the arbitration agreement from Plaintiff's personnel file request create a factual dispute about assent. Contract formation turns on the objective acts at the time of agreement, not on later document retention practices or whether

Plaintiff subjectively recalls receiving a copy. Plaintiff does not deny that she clicked through the acknowledgment screen or that the arbitration disclosure and link appeared before she could proceed. Those undisputed facts are sufficient to establish assent.

The Court finds that a reasonable person in Plaintiff's position would have understood that clicking "I agree" manifested assent to the Arbitration Policy, and that Plaintiff electronically accepted the agreement in August 2017 and on several occasions thereafter. *Sgouros*, 817 F.3d at 1034–35.

Plaintiff next argues that, even if a contract was formed, it is not enforceable because she lacked bargaining power, and the agreement was offered on a take-it-or-leave-it basis. Questions of enforceability, however, have been expressly delegated to the arbitrator. The delegation clause provides that:

> Any dispute as to arbitrability, including disputes about this Policy's enforceability, unconscionability, validity and applicability to a particular Claim must be resolved by the arbitrator in arbitration and not by the court.

(Doc. 8-1, p. 10). Such clauses require threshold enforceability challenges to be resolved by the arbitrator. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006).

In summary, the Court concludes that Plaintiff formed an agreement to arbitrate with Best Buy. Whether that agreement can be avoided on grounds such as unconscionability or public policy must be decided by the arbitrator, that is unless Plaintiff's IWTA arguments negate contract formation, which the Court addresses next.

## B. The IWTA Does Not Negate Contract Formation

As a threshold matter, the Court need not resolve Defendants' argument that IWTA is categorically inapplicable because the arbitration agreement was originally executed before the statute's effective date. The record reflects that Plaintiff was required to re-assent to the arbitration agreement each time she applied for and accepted a new position or promotion, including on multiple occasions after the IWTA became law. Under Illinois law, such re-assent may be understood either as an amendment to an ongoing employment relationship or as the formation of a new contract supported by new consideration.[5] The Court need not decide which characterization controls, because even assuming the IWTA applies to the operative agreement, Plaintiff's argument still fails. The IWTA does not negate contract formation; it supplies, at most, a defense to enforcement that must be decided by the arbitrator.

Plaintiff's position rests on the premise that the IWTA renders the arbitration agreement void ab initio and therefore nonexistent. That is not what the statute provides. The IWTA states that certain employment provisions are "against public policy and void and unenforceable." 820 ILCS 96/1-25. But Illinois law draws a critical distinction

---

[5] Illinois law does not treat every re-assent or contractual amendment as the formation of a new contract. Instead, courts examine whether the parties' rights and obligations were materially altered. *Nebel, Inc. v. Mid-City Nat'l Bank of Chi.*, 329 Ill. App. 3d 957, 965-67, 769 N.E.2d 45, 51-53 (2002). Where modifications are "routine" or do not significantly change the parties' rights and duties, they may constitute only a reaffirmation or continuation of the existing agreement. *Id.* (discussing McKay Nissan, Ltd. V. Nissan Motor Corp. in U.S.A., 764 F. Supp. 1318 (N.D. Ill. 1991)). By contrast, where the parties undertake materially new obligations or significantly alter existing ones, Illinois law recognizes that a new agreement or novation may arise. *Nebel*, 329 Ill. App. 3d at 966-67. The Court need not determine whether Plaintiff's subsequent assents to the arbitration agreement constitute a new obligation "entered into" after enactment of the IWTA. Even assuming the operative agreement is subject to the IWTA, Plaintiff's challenge goes to enforceability and not contract formation. Therefore, it must be decided by the arbitrator.

between contracts that are void ab initio and those that are merely voidable. A voidable agreement "may be ratified," and therefore is treated as a defense to enforcement rather than an obstacle to contract formation. *K.F.C. v. Snap Inc.*, 29 F.4th 835, 838 (7th Cir. 2022). Where state law permits the contract to exist unless and until it is avoided, the defect concerns the agreement's validity; not its existence. *Id.* at 839.

That is the situation here. The IWTA does not declare that no contract can be formed, nor does it deprive employees of the legal capacity to assent. Rather, it reflects a legislative judgment that certain waivers should not be enforced as a matter of public policy. As in *K.F.C.*, where a minor's age and public policy objections were held to be defenses to enforcement, not failures of formation, Plaintiff's reliance on the IWTA challenges the agreement's validity, not its existence. Under controlling Supreme Court and Seventh Circuit authority, such challenges must be resolved by the arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006); *K.F.C. v. Snap Inc.,* 29 F.4th 835, 838-39 (7th Cir. 2022).

**C.  Even If the IWTA Were Construed to Bar Formation, It Would Be Preempted**

Even assuming arguendo that the IWTA could be read to invalidate arbitration agreements at inception, the statute would be preempted by the FAA. Section 2 of the FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. By its terms and as interpreted by the Supreme Court, the FAA reflects a national policy favoring arbitration and "foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements." *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984).

18

Accordingly, state laws may invalidate arbitration agreements only to the extent they rely on generally applicable contract defenses, such as fraud, duress, or unconscionability. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

When a state law purports to "prohibit[] outright the arbitration of a particular type of claim," it conflicts with the FAA and is displaced. *Concepcion*, 563 U.S. at 341; *see also Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (state law prohibiting agreements to arbitrate certain claims preempted by the FAA). By contrast, generally applicable state laws that apply in a way that disfavors arbitration require a case specific inquiry to determine whether "they have a 'disproportionate impact' on arbitration or 'interfere[ ] with fundamental attributes of arbitration and thus create [ ] a scheme inconsistent with the FAA.'" *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1159 (9th Cir. 2013) quoting *Concepcion*, 563 U.S. at 341–44.

The IWTA falls firmly within the first category. It prohibits arbitration of a defined class of claims, namely, certain workplace misconduct claims. 820 ILCS 96/1-25(b). Laws that categorically prevent arbitration of particular claims are the type of conflicting state rules that the Supreme Court has held are displaced by the FAA. *Concepcion*, 563 U.S. at 341; *Marmet Health Care Ctr.*, 565 U.S. at 532–33.

As one recent Northern District of Illinois decision illustrates, the IWTA's language, by prohibiting "[a]ny [unilateral] agreement…[to] arbitrate" workplace misconduct claims, constitutes an outright ban on a particular category of claims, and is therefore preempted. *Jennings v. Ed Napleton Elmhurst Imports Inc.*, No. 1:23-CV-14099, 2025 WL 461433, at *3 (N.D. Ill. Feb. 11, 2025) (interpreting 820 ILCS 96/1-25(b)); cf.

*Marmet Health Care Ctr.*, 565 U.S. at 532–33 (West Virginia law banning arbitration of personal injury or wrongful death claims preempted).

Thus, even if the IWTA were construed to bar the formation of arbitration agreements, it would be preempted by the FAA and cannot serve as a basis to resist enforcement. The FAA's displacement of conflicting state law is categorical where, as here, the statute prohibits arbitration of a defined class of claims. *Concepcion*, 563 U.S. at 341; *Marmet Health Care Ctr.*, 565 U.S. at 532–33.

**D.    Scope of Arbitration and Refusal to Arbitrate**

Once a valid agreement to arbitrate is established, the Court must consider whether the dispute falls within the scope of the arbitration agreement and whether the opposing party has refused to arbitrate. *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 168 (7th Cir. 2024). Plaintiff does not dispute that these factors are met here, thereby waiving any argument to the contrary. *See,* e.g., *Yang v. Fedex Freight, Inc.*, No. 15 CV 1037, 2016 WL 3444219 (N.D. Ill. June 23, 2016) (failure to respond to an argument constitutes waiver).

Further, the Policy defines "Covered Claims" broadly as including "past, present or future Claims between an Employee/former Employees or applicant and Best Buy, that arise out of or relate in anyway to…employment and/or termination of employment." Covered claims expressly include "tort claims, wrongful discharge claims, discrimination, harassment, and retaliation claims, and claims under any federal, state or local statute, regulation, wage order or ordinance." (Doc. 8-1, pgs. 6-7). The claims at issue here clearly belong within this definition.

As the Seventh Circuit has held, "[o]nce the court finds that there is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to show that the dispute is not covered by the agreement." *Wilcosky v. Amazon.com, Inc.*, 517 F. Supp. 3d 751, 767 (N.D. Ill. 2021). Plaintiff has not met this burden and has not argued that any of her claims fall outside the scope of the agreement. For its part, Best Buy has invoked the applicable terms and conditions, demonstrating that the claims are covered and that Plaintiff has refused to arbitrate. Under these circumstances, the Court must compel arbitration and stay the litigation.

## V.    DISMISS OR STAY

The final issue is whether the case should be dismissed or stayed after compelling arbitration. Citing to 9 U.S.C. §§ 3 and 4, Defendants ask the Court to "enforce the Parties' mutual agreement to arbitrate claims, dismiss this case, or in the alternative stay the case…" (Doc. 7). In *Smith v. Spizzirri*, 601 U.S. 472 (2024), the Supreme Court clarified that § 3 of the FAA removes a court's discretion to dismiss once a stay has been requested. The Seventh Circuit has interpreted *Spizzirri* to mean that a district court must issue a stay only when one of the parties has requested one; otherwise, the court retains discretion to dismiss. *Nat'l Cas. Co. v. Cont'l Ins. Co.*, 121 F.4th 1151 (7th Cir. 2024). The Seventh Circuit's recent decision in *Retzios v. Epic Systems Corp*, further indicates that, even when a stay is requested in the alternative, dismissal is not permitted. In *Retzios*, the defendant moved to compel arbitration and asked the court to "either dismiss or stay" the action. 2024 WL 5356563, at *1 (N.D. Ill. Mar. 26, 2024), aff'd, 126 F.4th 1282 (7th Cir. 2025). After the district court compelled arbitration and dismissed the case. On Appeal,

although the Seventh affirmed the arbitration decision, it admonished the district court for dismissing the case, stating as follows:

> The district judge should not have dismissed this suit. The Federal Arbitration Act calls for a suit referred to arbitration to be stayed rather than dismissed, when a party requests a stay (as Epic did). 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 144 S.Ct. 1173, 218 L.Ed.2d 494 (2024); *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008). Had the court entered a stay, that order would not have been appealable. 9 U.S.C. § 16(b)(1). But appellate jurisdiction depends on what the district court did, rather than what it should have done, so we must proceed.

*Retzios v. Epic Sys. Corp.*, 126 F.4th 1282, 1285 (7th Cir. 2025). Other Appellate Courts addressing the same procedural posture have reached the same conclusion. Post-*Spizzirri*, the Ninth Circuit held that a motion seeking to "dismiss or, in the alternative, stay" constitutes a § 3 stay request requiring a mandatory stay. *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 711 (9th Cir. 2024). Likewise, the Third Circuit held that where defendants moved to "dismiss, or in the alternative to stay," a stay is required if the claims are arbitrable. *Cornelius v. CVS Pharmacy, Inc.*, 133 F.4th 240, 245 (3d Cir. 2025). Together, these authorities establish that a motion to compel arbitration coupled with an alternative request for a stay triggers § 3's mandatory stay requirement and forecloses dismissal.

## VI.    <u>CONCLUSION</u>

For these reasons, Defendants' Motion to Compel Arbitration (Doc. 7) is **GRANTED**.    All proceedings in this case are **STAYED,** and all deadlines are **TERMINATED**. Defendants' Motion to Dismiss (Doc. 7) is **DENIED.**

The parties are **DIRECTED** to file a status report advising the Court of the status of the arbitration proceeding on or before August 3, 2026, and every February and August thereafter until the arbitration is complete, and to file a final status report within 30 days of the completion of the arbitration.

**SO ORDERED.**

Dated: February 3, 2026

/s/ *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge